**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON GROSSINGER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2353** |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF TRANSPORTATION**, *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**BEETLESTONE, C.J.**                                                          **MAY   14  , 2026**

Brandon Grossinger, a prior litigant in this Court, has filed a new case seeking

declaratory and emergency injunctive relief against Defendants Pennsylvania Department of

Transportation ("PennDOT"), its Secretary Michael Carroll in his official capacity, as well as

PennDOT's Bucks County Permits Supervisor Brian Graybeal in his official capacity.

Grossinger also seeks to proceed *in forma pauperis*.  As explained below, the Court will grant

Grossinger leave to proceed *in forma pauperis* and dismiss the Complaint.  Grossinger's

emergency motion for temporary restraining order will be denied.

**I.      BACKGROUND AND FACTUAL ALLEGATIONS**[1]

Grossinger asserts that his claims arise from PennDOT's contradictory handling of a

driveway permit and "lawful-access issues associated with property and access points connected

to 3931/3932 Swamp Road and 3669 Cold Spring Creamery Road in Bucks County,

Pennsylvania." (Compl. at 1.)  This property was the subject of Grossinger's earlier case,

*Grossinger v. Lichty*, No. 25-2510 (E.D. Pa.) ("*Grossinger I*").  In that earlier case, Grossinger

---

[1] Unless otherwise stated, the facts are taken from Grossinger's Complaint.  (ECF No. 1.)
The Court adopts the pagination supplied by the CM/ECF docketing system.

attempted *inter alia*, to bring claims on behalf of an entity called Bunny's Flowers against the owner of the property, as well as his own claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the First Amendment.  The claims brought on behalf of Bunny's were dismissed when Grossinger failed to obtain counsel for the entity.  (*Grossinger I*, ECF No. 41.)  Thereafter, the Court dismissed Grossinger's own claims as implausible because they were brought against defendants against whom the ADA statute did not apply and who were not state actors liable for civil rights violations under 42 U.S.C. § 1983.  (*Id.*, ECF Nos. 58, 59.)

Grossinger asserts claims in this case under the ADA and § 1983 alleging that he has relied for years on access to the Swamp Road property "in connection with residence-related, agricultural, volunteer, and operations activities."  (Compl. ¶ 11.)  Defendant Graybeal has communicated to him in writing that PennDOT "initially concluded the complained-of-matter occurred on private property and that PennDOT had no jurisdiction to intervene."  (*Id.* ¶ 13.)  Graybeal added that, if access is sought as a right-of-way, a Highway Occupancy Permit ("HOP") is required; an unpermitted driveway on a Commonwealth right-of-way may not be used; and a permit must be obtained for a driveway, or the non-permitted driveway removed and the area restored.  (*Id.* ¶ 14.)  In response, Grossinger refrained from using the disputed driveway or directing others to use it.  (*Id.* ¶ 16.)  As a result, he became "functionally blocked from what he understood to be lawful access" to the property.  (*Id.* ¶ 17.)  Grossinger asserts that his "records" indicate evidence of physical modification of the area, including the driveway, the landowner signed an authorization relating to the HOP process, and "written guidance relayed through a state legislative office indicating that a tenant may apply for an HOP with landlord permission and proof of lease."  (*Id.* ¶¶ 18-22.)  Grossinger did not attach a copy of the referenced landlord-signed HOP authorization or any other paperwork indicating an HOP

application was filed, nor has he affirmatively alleged in narrative form that the application was filed, described who filed it, or indicated there was official action on the application.

Grossinger asserts that he "has disabilities that make safe, stable, predictable, and lawfully authorized access especially important." (*Id.* ¶ 24.)  He does not, however, provide any information about his disability.  Grossinger states he has asked for clarification from PennDOT regarding the HOP and access status of the disputed driveway but has not received "a clear written resolution of those questions." (*Id.* ¶¶ 25-27.)  He claims that PennDOT's "contradictory written position left [him] in a no-win condition: the agency disclaimed practical intervention while simultaneously declaring the access route unlawful absent a permit." (*Id.* ¶ 28.)  As a result, he has suffered continuing access barriers, operational harm, safety concerns, and "evidentiary prejudice." (*Id.* ¶ 30.)

Attached to the Complaint are numerous screen shots of excerpts of emails between Grossinger and PennDOT officials, including one showing a picture of flooding on the property. (ECF 1-1 at 1.)  A September 30 – year unstated – email from Gus Fiocca of PennDOT sent at 2:14 pm informed Grossinger that, based on documentation he submitted to the agency Fiocca failed to find a copy of a signed HOP application for a driveway for the property. (*Id.* at 6.)  He did locate an application for a "'temporary construction access' for work by and for [a] utility company that have recorded easements for said property" and  "conclude[d] with and concur[red] with Mr. Graybeal's previous assessment and statement."[2]  Fiocca informed

_____

[2] The content of Graybeal's "previous assessment and statement" is not clear because Grossinger did not attach any document from Graybeal or include a narrative description of his statement in the Complaint.  But Grossinger appears to have attached his response to Graybeal in which he asked Graybeal to reopen the investigation of his complaint and attached "a packet of materials from our records." (ECF No. 1-1 at 1.)  He references an email from a state senator's office allegedly proving PennDOT and the Township were fully aware of the safety/access issues and tenant eligibility for an HOP at the time. (*Id.*)  Another excerpt that is undated, unattributed,

Grossinger that "[t]he matters you stated as maybe safety issues occur on private property and outside PENNDOT right of way and we have no jurisdiction to intervene." (*Id*.)  Fiocca goes on to state that the Commonwealth "may only issue driveway permits to or through 'deed in fee simple' owners of record for said property.  If you wish to gain access to the property from the PENNDOT Right of Way, an HOP is required" submitted by a "deed in fee simple" owner.  (*Id*.)

Grossinger responded to Fiocca at 4:25 pm challenging the thoroughness of his investigation stating it could not be considered complete or credible "when the primary complainant – the tenant nonprofit organization, Bunny's Flowers – was never contacted." (*Id*. at 4.)  Grossinger purportedly attached to his email a signed HOP application "signed and dated by the 'deed in fee simple' landowner of record, Mr. Mark Lichty on November 21, 2024." (*Id*.)  As stated, no such application was attached to the Complaint and described in narrative form.

Grossinger asserts claims under the ADA against the Defendants alleging he is a qualified individual with a disability, PennDOT is a public entity, and by its actions have denied or risk denying him "meaningful access to governmental processes and determinations affecting lawful access and safe participation in activities dependent on that access."  (*Id*. ¶ 34.)  He also asserts a § 1983 claim for violation of his Fourteenth Amendment rights against Defendants Graybeal and Carroll claiming that he has a "concrete interest in a clear, non-arbitrary, and reviewable determination" of the access issue.  (*Id*. ¶¶ 37-38.)  Grossinger seeks a declaration of the rights and obligations of the parties concerning the disputed access and HOP status, and an

---

and not described in the Complaint, but appears to be from the state senator's office contains the following: "I have received a response from PennDOT regarding alternative avenues to receive the required HOP for a driveway.  Tenants can apply for an HOP with the landlord's permission. When submitting the application, the tenant must provide proof of lease.  Brian Graybeal, PennDOT's Bucks County Permits Supervisor can answer any question you have about this process." (*Id*.)  Grossinger is also reminded by the author that he or the landlord must comply with Township requirements for a driveway.  (*Id*.)

order enjoining Defendants from changing the disputed access conditions, preserving all records, and requiring 72 hours written notice of any physical alteration of the access.[3]  (*Id*. at page 4.)

## II.    STANDARD OF REVIEW

The Court grants Grossinger leave to proceed *in forma pauperis.*   Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)).  At this early stage of the litigation, the Court will accept the facts alleged in the Complaint as true, draw all reasonable inferences in Grossinger's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  The Court may also take judicial notice of prior court proceedings. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.") (collecting cases); *see also In re Ellerbe*, No. 21-3003,

---

[3] Grossinger repeats the same facts and makes the same requests for relief in his Emergency Motion for Temporary Restraining Order and Preliminary Injunction.  (ECF No. 2.)

2022 WL 444261, at *1 (3d Cir. Feb. 14, 2022) (*per curiam*) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings)).

The Court construes *pro se* allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

### A.    ADA Claim

Grossinger asserts a claim under Title II of the ADA, the section governing public entities. 42 U.S.C. § 1213, *et seq*. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a plausible claim under Title II of the ADA, a plaintiff must allege that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason

of his disability." *Montanez v. Price*, 154 F.4th 127, 146 (3d Cir. 2025) (citing *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018)).

To be considered a "qualified individual with a disability" under Title II, a plaintiff must allege that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ."  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12102(2)(A).  With the passage of the Americans with Disabilities Act Amendments Act ("ADAAA") in 2008, "Congress mandated that the definition of disability shall be construed in favor of broad coverage of individuals to the maximum extent permitted." *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221 (3d Cir. 2024) (cleaned up).  Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, No. 10–861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

Grossinger's conclusory allegation that he is a qualified person with a disability is insufficient to allege a Title II claim.  He provides no information describing his disability. Since there is no information about how his alleged disability affected a major life activity, the Title II claim has not been plausibly alleged.  Moreover, as described next, because the status of any HOP application is unclear, Grossinger has also failed to allege plausibly that he has been excluded from participation in or been denied the benefits of a service, program, or activity of a public entity by reason of a disability.  Accordingly the ADA claim must be dismissed but the Court will permit Grossinger an opportunity to file an amended complaint to cure these defects by making additional factual allegations to satisfy the elements of the claim.

#### B.    Fourteenth Amendment Claim

While not entirely clear, Grossinger may be seeking to assert a procedural due process claim against the Defendants based on their alleged contradictory written position that the safety issue with the driveway occurred on private property over which "PennDOT had no jurisdiction to intervene," (Compl. ¶ 13), and its position that a driveway required an HOP and could be removed if unpermitted, (*id*. ¶ 28).  The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest.  To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally protected property or liberty interest.  *Daniels v. Williams,* 474 U.S. 327, 339 (1986)); *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010).  Only upon finding that a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest.

If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due.  Stated another way, in order to state a plausible Fourteenth Amendment due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law."  *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)).  "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what [s]he wants."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).  Due process is not a technical conception with a fixed content unrelated to time,

place, and circumstance. *Gilbert v. Homar,* 520 U.S. 924, 930 (1997). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Grossinger's procedural due process claim is not plausible. First, it is entirely unclear from Grossinger's allegations that he has a protectable liberty or property interest to support a due process claim. He does not allege that he is the owner of the property or that he has a leasehold interest the property. Notably, in his email response to Fiocca challenging the thoroughness of Fiocca's investigation, Grossinger stated that Bunny's was the tenant of the property and not himself. Moreover, in *Grossinger I*, he attached exhibits to his pleadings indicating that it was Bunny's that had a leasehold interest and not himself. Within that Complaint was a copy of a paper signed by the landlord Lichty and Grossinger to authorize Grossinger to act as Lichty's agent with respect to an HOP for a driveway. (*Grossinger I*, Compl. at 9, 22, 76.) But Grossinger did not address that agreement in his new Complaint nor allege he used that authority to file a permit application. Also filed of record in *Grossinger I* was a "Partnership Agreement Bunny's Flowers and Groverman LLC Land/Ground Lease Agreement." (ECF No. 5 at 10-16.) The Partnership Agreement provided that Groverman LLC agreed to lease to Bunny's – not Grossinger – a four acre "site" otherwise unspecified anywhere in the agreement for a term of five years from January 21, 2022 to January 21, 2027. (*Id.* at 11-12.) The Agreement was signed by Grossinger, for Bunny's Flowers as the tenant. (*Id.* at 15, 16.) Finally, attached to a different pleading was a lease between Mark Lichty and Gary Glasman signed on January 29, 2021. (*Grossinger I*, ECF No. 11-3.) That lease was the subject of a separate "memorandum of understanding" providing "This is the official agreement of a 5 year term for Bunnys Flowers . . . to farm and to use Marks Lichtys land for various purposes at

his ultimate discretion. . . .  At any point in time Mark the owner reserved the right to break the agreement under reasonable circumstances if the tenant is illegally or unethically using the land." (*Id*. (ECF No. 11-1 at 2.)  Based upon these pleadings that Grossinger previously filed with the Court indicating that Bunny's was the tenant of the property and his lack of any allegations in the current Complaint indicating that he has a personal interest in the Swamp Road property, he has not state a plausible due process claim.

Even if he had a protectable interest in the Swamp Road property and the driveway permit, Grossinger has not alleged facts that the procedures available to him did not provide due process of law.  Grossinger does not allege facts that an HOP was filed by one with an interest in the property, or that the HOP was thereafter denied.  He also appears to assert arbitrary conduct in the statement by Graybeal that any "safety" issue involving conditions on the property – possibly the flooding depicted in the email to PennDOT – was outside of PennDOT's jurisdiction, with the agency's assertion that it had jurisdiction to enforce a permit obligation for a driveway on a Commonwealth right of way.  While unclear, these appear to be separate issues involving conditions on the Swamp Road property itself – a "safety" issue between the landlord and tenant – and the issue of the HOP application and enforcement.  There appears to be only confusion of these separate issues by Grossinger, rather than arbitrary conduct by PennDOT officials, and Grossinger has not alleged facts to show any plausible arbitrary conduct by officials in addressing these two issues differently.  Accordingly, the § 1983 claims will also be dismissed with leave to amend.

## III.    CONCLUSION

For these reasons, Grossinger's Complaint will be dismissed on statutory screening because his claims are not plausible as stated.  Because he has not shown a likelihood of success

on the merits of his claims, his request for preliminary injunctive relief will be denied. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); Fed. R. Civ. P. 65.  An order containing additional information on amendment will be entered.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**