**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON GROSSINGER,**<br>**Plaintiff,**<br><br>**v.**<br><br>**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, *et al.*,**<br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION NO. 26-CV-2353** |

**MEMORANDUM**

**BEETLESTONE, C. J.** **AUGUST 4, 2026**

In a prior Memorandum and Order, the Court dismissed the complaint filed by Brandon Grossinger asserting claims the Americans with Disabilities Act ("ADA") as well as constitutional claims against the Pennsylvania Department of Transportation ("PennDOT"), its Secretary Michael Carroll in his official capacity, as well as PennDOT's Bucks County Permits Supervisor Brian Graybeal in his official capacity. *Grossinger v. Pa. Dep't of Trans.*, No. 26-2353, 2026 WL 1358735 (May 14, 2026). The ADA claims were dismissed without prejudice because Grossinger failed to allege plausibly that he was a qualified person with a disability. *Id.* at *4. His constitutional claims were dismissed without prejudice because he failed to allege a protectable liberty or property interest to support a due process violation. *Id.* at *5. Grossinger has now returned with an Amended Complaint (ECF No. 13.)[1] For the following reasons, the Amended Complaint is dismissed.

[1] In the Court's order filed on May 14, 2026 dismissing the claims (ECF No. 9), Grossinger was permitted thirty (30) days to file an amended complaint. When he failed to do so, the Court entered a final order of dismissal on June 23, 2026 (ECF No. 10). When Grossinger filed an improper "Notice of Filing Master Emergency Motion for ADA Accommodation" (ECF No. 11), seeking to incorporate by reference a motion he filed in another case, the Court construed it as a motion for reconsideration of the dismissal order under Fed. R.

## I. FACTUAL ALLEGATIONS[2]

Grossinger asserts he is disabled by reason of Post-Treatment Lyme Disease Syndrome. (Am. Compl. ¶¶ 8-13.) He has personally used and relied on the "access point" associated with a property in Bucks County, i.e., a driveway, to access his personal property, equipment, records, medical support items stored there, and for activities in which he participated. (*Id.* ¶¶ 4, 16.) He does not claim to possess any leasehold interest in the property and does not purport to bring any claim for the nonprofit entity he controls, Bunny's Flowers. (*Id.* ¶ 5.) The access point is on a Commonwealth roadway/right of way. (*Id.* ¶ 14.) Grossinger has used the driveway for years but the driveway has been repeatedly described and photographed as flooded, deeply rutted, unstable, and close to the state highway. (*Id.* ¶¶ 15-16.) He has refrained from using it after PennDOT "communicated that an unpermitted access point on a Commonwealth right-of-way could not lawfully be used." (*Id.* ¶ 16.) The landowner allegedly signed a Highway Occupancy Permit ("HOP") "authorization or application paperwork authorizing [Grossinger] to act in connection with" a permit to allow a driveway to be opened onto the premises from the state highway on which it is located.[3] (*Id.* ¶ 17.) He sent "owner-signed paperwork dated November

Civ. P. 59(e), reopened the case, and permitted Grossinger another thirty (30) day period to file an amended complaint. (ECF No. 12.) On July 21, 2026, he filed another Rule 59(e) motion, appending his proposed amended complaint. The Court will direct the Clerk to file the Amended Complaint on the docket but deny the motion since the relief has already been granted.

[2] The factual allegations set forth in this Memorandum are taken from the Amended Complaint (ECF No. 13 at 7-15). The Court adopts the sequential pagination assigned to all pleadings by the CM/ECF docketing system.

[3] *See* 36 Pa. Cons. Stat. § 670-420(b)(2) ("No person, municipality or municipality authority shall open a driveway onto a State highway or open the surface of or occupy a State highway without a permit."); 67 Pa. Code § 441.3 ("No driveway, local road or drainage facility or structure shall be constructed or altered within State highway right-of-way and no drainage facility of the Department may be altered or connected onto without first obtaining a permit from the Department."); *id.* § 441.5 (a) ("Upon application duly made, in accordance with this chapter,

21, 2024" to PennDOT for review. (*Id.*) He claims that a "state legislative office separately relayed PennDOT guidance that a tenant may apply for an HOP with the landlord's permission and proof of lease, and identified Defendant Graybeal as the PennDOT official who could answer questions about that process." (*Id.* ¶ 18.) Grossinger asserts an ADA claim based on PennDOT's conflicting communications about the HOP and alleged lack of a reviewable decision on the application.

Grossinger communicated to Graybeal that the flooded and rutted conditions on the property itself were unsafe, leading Graybeal to tell him that the conditions on private property are not within PennDOT's jurisdiction. (*Id.* ¶ 21.) At the same time, PennDOT communicated that access from the right-of-way required an HOP, that an unpaved driveway could not be used, and that the access might have to be removed and the area restored if no permit existed. (*Id.* ¶

---

a permit will be issued by the appropriate district office, subject to this chapter and the conditions contained on the permit and its attachments and supplements."); *see also id.* § 441.3(b) ("(b) Who may apply for a permit. Permit applications shall be submitted in the name of the owner of the property. If the applicant does not hold fee title to the property, the applicant shall notify the fee title holder that an application has been submitted."); and *id.* § 441.1 (defining an owner as a person holding fee title to a property, an estate or other legal interest in property, such as an easement, a lease, a license or subsurface rights, or an equitable interest in property under a sales agreement or an option to purchase).

PennDOT's 520-page Highway Occupancy Permit Operations Manual, found at https://www.pa.gov/content/dam/copapwp-pagov/en/penndot/documents/public/pubsforms/publications/pub-282/pub%20282.pdf (last viewed Aug. 3, 2026), describes the process for applying for an HOP, repeating these code provisions. It provides that an applicant other than a fee owner can submit the application with the fee holder's consent *id.* at 19-20, but reiterates that "Driveway applications must be submitted in the name of the property owner, as defined in [Pa. Code § ] 441.1," *id.* at 19. The Manual also contains specific instructions, document requirements, and procedures with which an applicant must comply. While not dispositive of Grossinger's due process claim, *see infra* note 4, he does not allege that he reviewed and followed these procedures, including most importantly the Resolution of Disputes and Complaints provisions contained in Chapter 7 of the Manual by filing a "Notice of Dispute HOP Applicant" form provided by PennDOT. *See* https://www.pa.gov/content/dam/copapwp-pagov/en/penndot/documents/public/pubsforms/forms/m-945y2.pdf (last viewed Aug. 3, 2026).

22.) In an email, PennDOT official Gus Fiocca stated that he could not locate a signed HOP application for the driveway. (*Id.* ¶ 23.) Grossinger responded, challenging the completeness of his search, identified the owner-signed HOP materials, and asked PennDOT to reopen or complete its review. (*Id.* ¶ 24.) Grossinger complains that PennDOT did not provide him with a "definitive notice stating whether the owner-signed paperwork was accepted, rejected, or deemed deficient, and what exact steps remained available to obtain a reviewable determination." (*Id.* ¶¶ 25, 30.) He complaints too that PennDOT "did not reconcile" the assertion that it lacked jurisdiction over the complained of condition of the driveway on the private property with its regulation of the public right-of-way. (*Id.* ¶ 26.)

Grossinger asserts that at some unspecified time he notified PennDOT he is disabled and that "safe, stable, predictable access and a clear written administrative process are especially important because of his functional limitations." (*Id.* ¶ 27.) He claims that he needed a "single written point of contact, a written status determination, identification of missing documents, and [a] reasonable response time" when his medical symptoms flared, and that without these accommodations he could not reliably determine what PennDOT considered pending, what it was missing, who was authorized to act, or what procedures were available. (*Id.* ¶¶ 29-31.) Grossinger asserts that the unresolved access issue has caused him to refrain from using the driveway to access his personal property; the "lack of a stable written process" increased his symptoms, required "repeated reconstruction of the same record"; and impaired his ability to coordinate his medical, legal, and administrative obligations. (*Id.* ¶¶ 32-33.)

Grossinger asserts that PennDOT violated the ADA because the HOP is a service, program, or activity of a public entity; he is a qualified individual with a disability; PennDOT had notice of his "need for clear written, consolidated, and predictable communication; and it

failed to provide reasonable accommodations because it "did not modify its fragmented communication and review process," and denied meaningful access to the HOP and "complaint-review" process. (*Id.* ¶¶ 37-41.) He also reasserts an official capacity due process claims against Graybeal and Carroll claiming that, although he is not the owner or lease-holder of the property, he has an interest in the personal property stored there and the "use of access necessary to reach those items," as well as an interest in his "owner-authorized role in seeking a PennDOT determination." (*Id.* ¶ 44.) He appears to base this claim as well on the allegedly contradictory information he received from Graybeal about PennDOT having no jurisdiction over the private property and PennDOT Secretary Carroll's implementation of compliance and record-review procedures. (*Id.* ¶ 45.) He claims that "PennDOT's communications effectively told [him] not to use the access without an HOP," while the agency did not act on the HOP, denying him a practical opportunity to be heard. (*Id.* ¶¶ 46-47.) He seeks prospective injunctive relief in the form of nondiscriminatory access to the HOP and complaint-review processes; as well as an order directing PennDOT to (1) provide a written determination whether the HOP paperwork was received, how it was classified, whether or not it was accepted, and what steps remain; (2) identify a "point of contact"; (3) provide accommodations including written communication and reasonable response times when his symptoms flare; and (4) preserve all records.

## II. STANDARD OF REVIEW

Because the Court has granted Grossinger leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the Amended Complaint as true, draw all reasonable inferences in Grossinger's favor, and ask only whether the Amended Complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes *pro se* allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

### A. Due Process Claims

Grossinger reasserts official capacity due process claims against Graybeal and Carroll alleging that, although he is not the owner or lease-holder of the property, he has interests in (1) personal property that is stored there and the "use of access necessary to reach those items," as well as (2) his "owner-authorized role in seeking a PennDOT determination." (Am. Compl. ¶ 44.) Underlying this claim is his assertion that (1) the information from Graybeal about PennDOT having no jurisdiction over conditions on the privately owned premises and (2) PennDOT Secretary Carroll's implementation of compliance and record-review procedures for the Commonwealth's right of way, are contradictory. (*Id.* ¶ 45.) He claims that "PennDOT's communications effectively told [him] not to use the access without an HOP," while the agency did not act on the HOP, denying him a practical opportunity to be heard. (*Id.* ¶¶ 46-47.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally protected property or liberty interest. *Daniels v. Williams,* 474 U.S. 327, 339 (1986); *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010).

Grossinger bases his due process claim on property rights. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . He must, instead, have a legitimate claim of entitlement to it." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). State created property interests implicate the protection of the procedural aspect of the due process clause. *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989). But federal constitutional law, and not state law, determines whether those interests rise to the level of a "legitimate claim of entitlement" protected by the Fourteenth Amendment. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).

Grossinger's due process claim concerning personal property stored on the premises is not plausible. He fails to allege that PennDOT "deprived" him of that property because of any alleged problem with the HOP. While he asserts that he has voluntarily "refrained" using the driveway after PennDOT "communicated that an unpermitted access point on a Commonwealth right-of-way could not lawfully be used" (Am. Compl. ¶ 16), this does not allege plausibly that PennDOT has seized his personal property or prevented him from otherwise removing his personal property from the premises abutting the state highway.

To the extent that the due process claim is based on Grossinger's "owner-authorized role in seeking a PennDOT determination" and PennDOT's alleged failure to process the HOP application or allow Grossinger to be heard, it too is not plausible. While Grossinger appears to assert that he had the owner's consent to apply for the permit (Am. Compl. ¶ 44), which the program permits, *see* 67 Pa. Admin. Code § 441.3(b), the provisions of the HOP program make clear that only the landowner has a protectible property interest in the permit under state law. *See id*. § 441.5(b) ("Permit issued only to property owner. Permits will be issued only to the owners of the property. Permits will not be issued to contractors of the property owner *nor to*

*any person other than the owner of the property*.") (emphasis added). Because only an owner is entitled to receive an HOP, Grossinger, who does not allege he is an owner and has specifically stated he has no leasehold or other legal interest in the property (Am. Compl. ¶ 5), has no state-created property interest or legitimate claim of entitlement to the HOP. *Steele*, 855 F.3d at 507; *Roth* 408 U.S at 577. He thus has no interest in the issuance or non-issuance of the HOP that the procedural side of the Due Process Clause protects. *See*, *e.g.*, *Amezquita v. Hernandez-Colon*, 518 F.2d 8, 13 (1st Cir. 1975) (holding that statutes prohibiting squatting on land "preclude us from recognizing in the plaintiffs a 'property' interest in the land which could not be disturbed without procedural preliminaries").[4]

Grossinger may also be attempting to state a substantive due process/arbitrary action claim based on his own perceived contradiction between Graybeal's statement that PennDOT has no jurisdiction over the private property and PennDOT assertion of jurisdiction over the privilege of granting highway access on Commonwealth rights-of-way (Am. Compl. ¶ 45), but that claim also fails. Substantive due process is a "component of the [Fourteenth Amendment] that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels*, 474 U.S. at 331). To be plausible, this type of due process claim must allege governmental conduct that "'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin*

[4] While unclear from the Amended Complaint, Grossinger also appears to have failed to use the HOP dispute process described in Footnote 3. In other words, he does not allege that he filed the "Notice of Dispute HOP Applicant" form available from PennDOT. To the extent he failed to avail himself of available process, he cannot come into federal court claiming a due process violation. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what [s]he wants.").

*v. California*, 342 U.S. 165, 172 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)). The United States Supreme Court explained that "the core of the concept" of due process is "protection against arbitrary action," *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998), but that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense" *id*. at 846 (quotation omitted).

Stated simply, the Court perceives no arbitrary contradiction between Graybeal's statement that PennDOT has no authority over the conditions on private land, an issue policed locally, and the agency's assertion of jurisdiction over access to Commonwealth highways under the statute and permitting regulations, and nothing in what Grossinger alleges describes conscious-shocking behavior. *See*, *e.g*., *Drummond v. Township of Robinson*, 784 F. App'x 82, 84 (3d Cir. 2019) ("Stalling, delay, and failure to notify about meetings do not rise to the level of the 'most egregious' official conduct, which is required in order to shock the conscience."); *Blain v. Township of Radnor*, 167 F. App'x 330, 333-34 (3d Cir. 2006) (holding that town council's frivolous appeal of decision, threat of condemnation, conflict of interest, and improper denial of subdivision plan did not arise to level of substantive due process claim); *Maple Prop., Inc. v. Township of Upper Providence*, 151 F. App'x 174, 179-80 (3d Cir. 2005) (holding that enactment of zoning ordinance selectively targeting parcel to preclude development was not a substantive due process claim); *Thornbury Noble, Ltd. v. Thornbury Township*, 112 F. App'x 185, 188 (3d Cir. 2004) (holding that rezoning over plaintiff's request and at request of another applicant in exchange for $600,000 contribution to township did not shock the conscience); *Levin v. Upper Makefield Township*, 90 F. App'x 653, (3d Cir. 2004) (holding that misrepresenting policies concerning floodplain and policy to prevent building, engaging in *ex*

*parte* communications, and delaying issuance of building permits was not conscious shocking for substantive due process claim).

**B. ADA Claims**

Grossinger asserts a violation of Title II of the ADA based on a failure to accommodate his disability. Title II of the ADA requires public entities like PennDOT to provide, in all of their programs, services, and activities, a reasonable accommodation to qualified individuals with disabilities. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). To state a plausible claim under the ADA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Id*. The element of discrimination by reason of disability can be met if a defendant failed to provide the plaintiff with reasonable accommodations for a disability. *Montanez v. Price*, 154 F.4th 127, 148 (3d Cir. 2025) (citing *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)). "The duty to accommodate is triggered when a disabled person's need for an accommodation becomes known, either because (1) he requests an accommodation or (2) his disability and concomitant need for an accommodation are open and apparent." *Id*. (citations omitted).

The ADA "does not require States to compromise their essential eligibility criteria for public programs. It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004). An alteration is fundamental if it would alter "the essential nature" of the program. *Alexander v. Choate*, 469 U.S. 287, 300 (1985); *see, e.g., Long v. Howard Univ*., 439 F.Supp.2d 68, 75 (D.D.C. 2006) (holding in an ADA Title III case that a "disabled individual, however, is not entitled to whatever

modification he thinks might accommodate his limitations. Nor is he entitled to obtain an advantage over his non-disabled peers. Rather, the ADA mandates that places of public accommodation make only those reasonable modifications that are necessary to give a disabled individual the same opportunity to obtain the offered benefit that he would have had were it not for the limitations caused by his disability—and, even then, only to the extent that the necessary modifications would not fundamentally alter the nature of that benefit." (citing 42 U.S.C. § 12182(b)(2)(A)(ii))). A "reasonable" accommodation required under Title II is one that gives the otherwise qualified plaintiff with disabilities "meaningful access" to the program or services sought. *Alexander*, 469 U.S. at 301. "[M]eaningful access must be defined with reference to the plaintiff's facial entitlement" to the benefit provided by the public entity. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 282 (2d Cir. 2003).

Grossinger's accommodation claim fails because he has no facial entitlement to the benefit of an HOP. Again, he is not the owner of the property and is thus not a "qualified plaintiff with disabilities" who is "otherwise eligible for the service." Only an owner has a right to the issuance of the HOP, the benefit of the program or services sought. Granting Grossinger his requested accommodations of access to the HOP and complaint-review processes – in other words, being granted the right to intervene in the HOP application process – as a nonowner, a non-leaseholder, and as someone who possesses no other interest in the premises, changes an essential nature of the HOP given the regulatory provision that only owners are entitled to the permits. *See Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) (holding that requested accommodation by disabled person of parking all day in one-hour free public parking area jeopardizing the availability of spaces to other disabled and nondisabled individuals, would also require city to cease enforcement of an otherwise valid ordinance, and was by its very nature a

fundamental alteration of the rule itself) *abrogated in part on other grounds by Lewis v. Humboldt Acquisition Corp*., 681 F.3d 312 (6th Cir. 2012) (*en banc*); *cf. Shavelson v. Bonta*, 608 F. Supp. 3d 919, 927 (N.D. Cal. 2022) (holding that requested modification, to permit physicians to administer aid-in-dying medication to otherwise eligible patients once they lose the ability to self-administer the medication due to their degenerative illness, would alter a long-considered regulatory framework creating sharp boundaries, and was thus a fundamental alteration); *Scalercio-Isenberg v. Port Auth. of New York & New Jersey*, 487 F. Supp. 3d 190, 204 (S.D.N.Y. 2020) (holding that plaintiff's request to move her bus back to its original ADA compliant gate after it was moved in a comprehensive reorganization of bus gates in the "world's busiest bus commuter hub" would "fundamentally alter the nature of the service[s] provided, or impose an undue financial or administrative burden" on the Port Authority); *Alexander v. Mayhew*, 451 F. Supp. 3d 1293, 1295 (N.D. Fla. 2020) (holding that a request for accommodation in the form of an injunction requiring a state to serve additional disabled individuals by forcing it to apply for a Medicaid program waiver to obtain an increase in or to exceed the statutory cap would fundamentally alter the state's program). Accordingly, Grossinger's ADA claims will be dismissed.

## IV. CONCLUSION

For these reasons, the Amended Complaint will be dismissed on statutory screening because Grossinger's ADA and § 1983 claims are not plausible. The Court concludes that any further attempt at amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"); *see also Gowans v. Axsom*, No. 25-2070, 2025 WL 2848907, at *2 (3d Cir. Oct. 8, 2025) (*per curiam*) (affirming where district

court instructed plaintiff about the deficiencies in his complaint and gave leave to amend but the plaintiff's subsequent filing "did not heed the Court's direction" (citing *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (*per curiam*) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."))); *Posey v. Klinefelter*, No. 25-1428, 2025 WL 1937084, at *2 (3d Cir. July 15, 2025) (*per curiam*) (affirming dismissal where the "District Court's orders and the Magistrate Judge's reports and recommendations all informed Posey as to the ways in which the complaints were deficient and provided multiple opportunities to amend, and yet Posey repeatedly failed to do so"). Accordingly, the dismissal will be with prejudice.[5] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). A final order of dismissal will be entered separately. Fed. R. Civ. P. 58(a).

**BY THE COURT:**

**/s/ Wendy Beetlestone**
**WENDY BEETLESTONE, C. J.**

[5] The Order will also deny as moot Grossinger's "Notice of Impediment to Access to Courts and Motion for Emergency Relief" (ECF No. 15). The Motion seeks to extend deadlines due to Grossinger's having food poisoning and difficulty with his email. Since there are no deadlines pending in this case, there is no cause to grant this relief.